UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DIANA STEDILLIE,<br><br>           Plaintiff,<br><br>    vs.<br><br>MILFORD CASUALTY INSURANCE COMPANY; AMTRUST NORTH AMERICA, INC.,<br><br><br>           Defendants. | 4:23-CV-04048-KES<br><br><br>ORDER DENYING AS MOOT PLAINTIFF'S MOTION TO COMPEL [DOCKET NO. 17] AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S AMENDED MOTION TO COMPEL [DOCKET NO. 20] |

**INTRODUCTION**

A discovery dispute is before the court on the complaint of Diana Stedillie, who alleges bad faith on the part of Milford Casualty Insurance Company and AmTrust North America, Inc. in the handling of her workers' compensation claim.  Docket No. 1, ¶¶ 1–55.  Ms. Stedillie moves this court to compel production of information and documents withheld by defendants.  See generally Dockets No. 17 and 20.  Ms. Stedillie further seeks attorney's fees and expenses as recompense for bringing the motions.  Docket No. 17 at p. 1; Docket No. 20 at p. 1.  The court has original jurisdiction over the matter pursuant to 28 U.S.C. § 1332.  This opinion resolves plaintiff's motion to compel [Docket No. 17] and amended motion to compel [Docket No. 20], which the district court referred to this magistrate judge.  Docket No. 23.

**FACTS[1]**

Diana Stedillie worked as a housekeeper at a Holiday Inn in Spearfish, South Dakota.  Docket No. 21 at p. 1.  Her employer was Frontier Lodging of Spearfish, LLC.  Docket No. 1, ¶ 6.  On February 5, 2017, Ms. Stedillie "injured the back side of her left leg/knee/calf area and felt a pop in her knee" when attempting to dislodge a work cart from an elevator.  Id. ¶¶ 8–9.  From the date of that injury until August 21, 2018, Frontier's workers' compensation carrier, Milford Casualty Insurance Company,[2] "accepted [Ms. Stedillie's] . . . claim as compensable and paid her benefits."  Id. ¶¶ 18, 32.

On August 21, 2018, Milford "informed [Ms. Stedillie] that no further medical treatment or other benefits would be paid."  Id. ¶ 32.  The impetus for the change was an independent medical examination ("IME") ordered by Milford and conducted by Dr. Jeffery Nipper on July 12, 2018.  See id. ¶¶ 19–32.  In his report, Dr. Nipper opined that any injury Ms. Stedillie suffered as a result of the February 5, 2017, incident had resolved, and that Ms. Stedillie's remaining complaints were not attributable to that incident.  Docket No. 1-1 at pp. 12–14.

Ms. Stedillie allegedly spent the next month trying to convince Milford that its new position was mistaken.  Docket No. 26 at p. 2.  During this time,

---

[1] For purposes of considering plaintiff's motion to compel, the court takes the facts as asserted in the complaint and plaintiff's briefs.  No imprimatur of the court as to their veracity is intended.

[2] According to defendants, AmTrust North America Inc. is "the authorized administrator and not an insurer."  Docket No. 24 at p. 2 n.4.

Ms. Stedillie states she received a letter from the carrier instructing that her injuries "were related to a previous work-related injury (from 2011), and she needed to contact her prior workers' compensation carrier." Id.; Docket No. 1, ¶¶ 10–12. Ms. Stedillie retained counsel. Docket No. 26 at pp. 2–3. After several letters from counsel, and several months' time, Milford ordered a new IME to be conducted by Dr. Thomas Ripperda on February 15, 2019. Docket No. 1, ¶¶ 34–37.

Dr. Ripperda's findings contradicted Dr. Nipper's. Dr. Ripperda considered Ms. Stedillie's injuries stemming from the February 5, 2017, incident to be both unresolved and more extensive than reported by Dr. Nipper. Compare Docket No. 1-1 at pp. 12–14 with Docket No. 1-2 at pp. 11–13.

In March of 2019, Milford "reinstated [Ms. Stedillie's] benefits." Docket No. 1, ¶ 42. Milford "paid back-pay for [Ms. Stedillie's] denied temporary total disability benefits, plus interest and reinstated benefits until October of 2022. [Milford] also retracted its denial of [Ms. Stedillie's] medical benefits, along with paying [Ms. Stedillie] an impairment rating." Id. ¶ 45. "The parties reached a workers' compensation settlement agreement on January 3, 2023." Id. ¶ 46.

In the instant case, Ms. Stedillie alleges that "[d]efendants breached their duty of good faith on numerous occasions" while handling her claim. Docket No. 26 at p. 9. Ms. Stedillie correspondingly seeks discovery to fortify her assertion. Cf. id. at p. 10. For some of her discovery requests, defendants contend that Ms. Stedillie seeks more than they are legally required to provide.

Docket No. 22-1 at p. 1; <u>see generally</u> Docket No. 24.  This opinion resolves the disputes.[3]

## DISCUSSION

### A.   Ms. Stedillie's Original Motion to Compel is Moot.

As a preliminary matter, the court notes that both Ms. Stedillie's original motion to compel [Docket No. 17] and her amended motion to compel [Docket No. 20] were referred to this magistrate judge.  Docket No. 23.  Because the filing of an amended motion renders any motions precedent "superseded in [their] entirety," Ms. Stedillie's motion to compel at Docket No. 17 has been rendered moot by the filing of her amended motion to compel at Docket No. 20. <u>See</u> <u>Lexington Ins. Co. v. Rolison</u>, 434 F. Supp. 2d 1228, 1230 (S.D. Ala. 2006); <u>see also</u> <u>El-Tabech v. Clarke</u>, 4:04-cv-3231, 2011 WL 1979847, at *1 (D. Neb. May 20, 2011).  The motion to compel at Docket No. 17 is accordingly denied as moot.

### B.  Discovery, Generally.

"Discovery is the process by which information is gathered before trial for the purpose of narrowing and defining the disputed legal and factual issues." <u>Williams v. McLain</u>, 708 F. Supp. 1086, 1090 (W.D. Mo. 1989).  Discovery "help[s] litigants gain an understanding of the key persons, relationships, and

---

[3] In the District of South Dakota, "a party filing a motion concerning a discovery dispute must file a separate certification describing the good faith efforts of the parties to resolve the dispute."  D.S.D. LOCAL R. 37.1.  The court finds that Ms. Stedillie, through the affidavits of her counsel and supporting attachments, has complied with the requirement.  <u>See</u> Docket Nos. 19, 19-1, 19-2, 19-3, 19-4, 19-5, 19-6, 19-7, 22, 22-1.  Defendants do not dispute compliance.  <u>See generally</u> Docket No. 24.

evidence in a case and . . . the veracity of those persons and purported evidence." Sentis Group, Inc. v. Shell Oil Co., 763 F.3d 919, 926 (8th Cir. 2014).

Among the discovery devices used to exchange information are interrogatories and requests for production of documents. See FED. R. CIV. P. 33–34. Interrogatories allow a party to learn facts within an adversary's knowledge "so that . . . questions of fact may be reduced to a minimum before trial." Onofrio v. Am. Beauty Macaroni Co., 11 F.R.D. 181, 184 (W.D. Mo. 1951) (citation omitted) (emphasis deleted). A request for production seeks inspection or copies of actual documents held by a party, "which relate to any matter that may be inquired into under Rule 26(b)." Huggins v. Fed. Express Corp., 250 F.R.D. 404, 405 (E.D. Mo. 2008) (quoting FED. R. CIV. P. 34(a)).

Rule 26(b) allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED R. CIV. P. 26(b)(1). What is relevant for discovery "is broader than what is admissible at trial; information sought in discovery need only be 'reasonably calculated to lead to the discovery of admissible evidence.'" Pearson v. Royal Canin USA, Inc., 4:22-CV-04018-KES, 2023 WL 5916437, at *3 (D.S.D. Sept. 11, 2023) (quoting Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC, 784 F.3d 1183, 1198 (8th Cir. 2015)).

Rule 26 limits discovery to that which is "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

> Whether requested discovery is proportional to the needs of the case is a fact-intensive inquiry that considers the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Pearson, 2023 WL 5916437, at *3 (quoting FED. R. CIV. P. 26(b)(1)) (cleaned up).

When a party fails to answer an interrogatory or produce materials responsive to a request for production, the party seeking discovery may move the court "for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1), (a)(3)(B)(ii)–(iii). The moving party "must make a threshold showing that the requested information falls within the scope of discovery under Rule 26(b)(1)." Sprint Comm. Co. L.P. v. Crow Creek Sioux Tribal Ct., 316 F.R.D. 254, 263–64 (D.S.D. 2016) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)). It then becomes the burden of the party resisting discovery to convince the court that "the discovery is irrelevant or disproportional." Id. (citations omitted). If the court determines the requests to be outside the scope allowed by Rule 26(b)(1), it must fashion appropriate limits. FED. R. CIV. P. 26(b)(2)(C)(iii).

Because this case is before the court based on its diversity jurisdiction, South Dakota law governs issues of substantive law. Schultz v. Sentinel Ins. Co., 4:15-CV-04160-LLP, 2016 WL 3149686, at *4 (D.S.D. June 3, 2016) (citing generally Erie R.R. v. Tompkins, 304 U.S. 64 (1938)). However, procedural issues are governed by federal law. Cook v. Kartridg Pak Co., 840 F.2d 602, 603–04 (8th Cir. 1988). Ms. Stedillie brings one count—bad faith failure to pay

insurance benefits—against defendants.  Docket No. 1 at p. 8.  To prevail on a bad faith claim in South Dakota, Ms. Stedillie "must prove: (1) an absence of a reasonable basis for denial of policy benefits, and (2) the insurer's knowledge of the lack of a reasonable basis for denial." Harvieux v. Progressive N. Ins. Co., 915 N.W.2d 697, 701 (S.D. 2018) (citations omitted).

Among the relief requested by Ms. Stedillie are punitive damages.  Docket No. 1 at p. 10.  To be awarded punitive damages in South Dakota, a plaintiff must show, through clear and convincing evidence, "that [defendants] acted with malice, actual or implied." Kirschenman v. Auto-Owners Ins., 280 F.R.D. 474, 482 (D.S.D. 2012) (citing Bertelsen v. Allstate Ins. Co., 796 N.W.2d 685, 698–99 (S.D. 2011)); SDCL § 21-1-4.1.  "Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person." Dahl v. Sittner, 474 N.W.2d 897, 900 (S.D. 1991).  "Presumed malice . . . is present when a person acts willfully or wantonly to the injury of others." Bertelsen, 796 N.W.2d at 699.  Presumed malice arises from "conduct [that is] more than mere mistake, inadvertence, or inattention; the acts must be "conceived in the spirit of mischief or of criminal indifference to civil obligations." Espinoza v. Fowler, 4:22-CV-04068-RAL, 2023 WL 5938106, at *3 (D.S.D. Sept. 12, 2023) (quoting Dahl, 474 N.W.2d at 900; Gabriel v. Bauman, 847 N.W.2d 537, 543 (S.D. 2014)).

**C.      The Disputed Discovery**

Ms. Stedillie's Amended Motion to Compel concerns disputes over

"Interrogatory Number 4 and Request for Production Numbers 10, 14, 15, 17,

20, 24." Docket No. 20 at p. 1. The court will discuss each in turn.

**1.      Interrogatory No. 4**

Interrogatory No. 4 asks:

> Was any business or third person, including experts, hired to
> adjust or review Plaintiff's claim? If so, provide the name of said
> company or person and describe in detail the relationship between
> you, said company or third person, and any opinions or reports
> they provided.

Docket No. 19-4 at p. 4.

Defendants' response was to direct Ms. Stedillie to documentation they

provided for Request for Production Nos. 23 and 24. Id. Ms. Stedillie did not

object to that form of response, but rather, to the redaction of certain data

within the documents. Docket No. 21 at p. 6; Docket No. 26 at p. 4; see also

Docket No. 24 at p. 4–6.

Ms. Stedillie ultimately rendered Interrogatory No. 4 duplicative when

she stated in her reply brief, "Plaintiff is willing to limit its Request for

Production Number 24 and Interrogatory Number 4 to the [discovery of the

redacted] fees [paid to ExamWorks] for the states that comprise the Eighth

Circuit." Docket No. 26 at p. 4.

Because Interrogatory No. 4 is now entirely duplicative of another

discovery request, the court denies Ms. Stedillie's motion to compel its answer.

FED. R. CIV. P. 26(b)(2)(C)(i).  The court's discussion of Request for Production No. 24 can be found in Section C7, *infra*.

### 2.    Request for Production No. 10

Request for Production No. 10 states:

> Provide copies of any employment evaluations for the individuals, including their supervisors, that reviewed or in any way participated in the handling of Plaintiff's claims, any employment contracts with said person(s), all documents related to compensation plans of said persons, any incentive plans offered to such persons and copies of such persons' employment files.  You may redact or withhold social security numbers, and bank, credit card or other financial account numbers of any person.

Docket No. 19-3 at p. 5.

Defendants largely refused this request.  Cf. Docket No. 19-6 at p. 8. They did produce ten years' worth of "performance evaluations for Kathy Ingram, the adjuster assigned to [Ms. Stedillie's] claim."  Id.; Docket No. 24 at p. 8.  They argue that anything more is irrelevant, disproportionate, and a breach of the confidentiality employees expect in their personnel files.  Docket No. 24 at pp. 7–9.  Ms. Stedillie counters that "[w]ell established legal precedent holds that the information within the personnel files is discoverable not just for the adjuster but the supervisors and managers[.]"  Docket No. 21 at pp. 8–9 (citing Leichtnam v. Am. Zurich Ins. Co., 5:15-CV-05012-JLV, 2018 WL 4701353, at *3 (D.S.D. Sept. 30, 2018)).

Ms. Stedillie is correct—to a degree.  This court has long held that the evaluations and personnel files of claims adjusters and their supervisors are both "relevant and discoverable" in bad faith disputes.  Hill v. Auto Owners Ins. Co., 5:14-CV-05037-KES, 2015 WL 1280016, at *8 (D.S.D. Mar. 20, 2015)

(citation omitted).  Such documents can reveal an "improper corporate culture" that incentivizes the mishandling of a claim.  Id. (citation omitted).  For example, in Fair v. Royal & Sun Alliance, the second-level manager of a claims adjuster kept "scorecards" that included a metric for "claims that [were] not closed by a certain target date."  278 F.R.D. 465, 476 (D.S.D. 2012).

In Torres v. Travelers Insurance Co., an adjuster's evaluation "directed him to 'develop and implement operational plans that produce results that meet or exceed target objectives for payout results.' "  CIV. 01-5056-KES, 2004 U.S. Dist. LEXIS 31888, at *43 (D.S.D. Sept. 30, 2004).  A fellow adjuster was instructed to 'improve the financial results for [the client.]' "  Id.  The culture was such that "key performers" were developed, and "low/poor performers" were replaced.  Id.  "As one defense expert stated in Torres, 'if you give somebody a number, an objective they have to reach, and you tie it to their career, they are going to reach that number or they are going to manipulate that number so that it comes out the way they want it."  Lyon v. Bankers Life & Cas. Co., CIV. 09-5070-JLV, 2011 WL 124629, at *8 (D.S.D. Jan. 14, 2011) (quoting Torres, 2004 U.S. Dist. LEXIS 31888, at *63)).

It follows, then, that the inspection of evaluations and other pertinent sections of personnel files is "reasonably calculated to lead to the discovery of admissible evidence."  See Chavis Van & Storage, 784 F.3d at 1198. Defendants appeal to the sensitive nature of employee files by quoting Whittingham v. Amherst College.  Docket No. 24 at p. 8 (quoting 164 F.R.D. 124, 127 (D. Mass. 1995)).  In Whittingham, the court denied a Title VII

10

plaintiff access to the personnel files of Amherst employees selected only by virtue of their race.  164 F.R.D. at 126–28.  That holding rests on a far distant shore from the facts of the instant case.  No doubt, this court has recognized citizens' "interest in protecting their personnel files from public view."  Pearson, 2023 WL 5916437, at *4 (citations omitted).  But as the court explained in Pearson, that privacy interest "must yield to discovery when the needs of the litigation outweigh the need for privacy."  Id.  Such circumstances are certain in bad faith disputes, because personnel files have a tendency to reveal an insurance company's culture in ways that cannot "be obtained from some other source that is more convenient, less burdensome, or less expensive."  Burke v. Ability Ins. Co., 291 F.R.D. 343, 352 (D.S.D. 2013); see FED. R. CIV. P. 26(b)(2)(C)(i).

Defendants cite to Knoll v. AT&T for the proposition that "courts have specifically granted protective orders to protect nonparties from the harm and embarrassment potentially caused by nonconfidential disclosure of their personnel files."  Docket No. 24 at p. 8 (quoting 176 F.3d 359, 365 (6th Cir. 1999)).  But here, on the joint motion of all parties, the district judge has already entered a protective order governing discovery.  Docket Nos. 13 & 14.  All parties run the risk of incarceration or fines should they misuse the files they seek.  Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500, 505 (8th Cir. 2000).  Defendants do not move for any additional protective order in their response.  See generally Docket No. 24.

11

Defendants do validly assert that the production of "the entirety of . . . employees' personnel files" is too broad a sweep for Ms. Stedillie's purposes. Docket No. 24 at pp. 7–8.  Ms. Stedillie instructs defendants that they may redact "social security numbers, and bank, credit card or other financial account numbers of any person."  Docket No. 19-3 at p. 5.  That is a start.  But in several bad faith cases out of this district, our courts have further recognized "health care documents, life insurance . . . W-4s, I-9s, retirement account information, information about employees' bank accounts for purposes of electronic deposits, and counseling information regarding employee assistance programs" as sensitive material that must also be redacted for discovery.  Nye v. Hartford Accident & Indem. Co., CIV. 12-5028-JLV, 2013 WL 3107492, at *11 (D.S.D. June 18, 2013) (citations omitted).  The court does here as well.

Finally, defendants theorize that Ms. Stedillie's broad request "could also include personnel files for those assigned to handle[ ] the claim after the settlement agreement was reached after this litigation was filed."  Docket No. 24 at p. 8 n.8.  To the extent such employees exist, their personnel files are irrelevant to the present inquiry, and shall be excluded from the required production.  In sum:

For the individuals, including their supervisors, that reviewed or in any way participated in the handling of plaintiff's claims up to and including the date of settlement, January 3, 2023, Ms. Stedillie's motion to compel as it pertains to Request for Production 10 is granted in part, and denied with

12

respect to the social security numbers, bank, credit card or other financial account numbers, health care documents, life insurance, W-4s, I-9s, retirement account information, information about employees' bank accounts for purposes of electronic deposits, and counseling information regarding employee assistance programs.

The court notes that this discovery request contains no time limitations. The court finds that a look-back period of seven years from the date of settlement is a reasonable time limit for the discovery.  Thus, defendants must produce personnel files that are responsive to this discovery request from January 3, 2016, to January 3, 2023.

For any individuals or supervisors whose immediate or supervisory involvement with Ms. Stedillie's claim began on or after January 4, 2023, Ms. Stedillie's motion to compel as it pertains to Request for Production 10 is denied.

### 3.  Request for Production No. 14

Request for Production No. 14 states:

> Produce all of Dr. Jeffrey Nipper's "Independent Medical Exam (IME)" and Record Review reports that you or any affiliated entity had Dr. Nipper perform on your insured from the last ten (10) years.  For purposes of this Request for Production, you may redact the name and identifying information related to the person examined.

Docket No. 19-3 at p. 5.

Defendants argue that the five years' worth of reports they already provided is legally sufficient and pray for relief from producing another five years' worth, which they argue is exceedingly burdensome, and disproportional

13

to the needs of the case.  Docket No. 24 at p. 6 (citing <u>Haukaas v. Liberty Mut. Ins. Co.</u>, 4:20-CV-04061-KES, 2022 WL 1719412, at *5 (D.S.D. May 27, 2022) (<u>Haukaas II</u>)).

Ms. Stedillie cites this court's memorandum opinion and order in <u>Haukaas</u>—and other cases—for the proposition that "[a] ten-year period is well within the permissible scope of discovery."  Docket No. 26 at pp. 6–7 (citing, *inter alia*, 4:20-CV-04061-KES, 2021 WL 5416251, at *9 (D.S.D. Nov. 19, 2021) (<u>Haukaas I</u>), <u>adopted as modified</u>, 2022 WL 1719412 (D.S.D. May 27, 2022)).

Ms. Stedillie's purpose for seeking the IMEs Dr. Nipper conducted for defendants is to demonstrate a trend—ostensibly a trend of unreasonably denying claims—"on behalf of the Defendants."  Docket No. 26 at p. 7.  Ms. Stedillie's concern is that the current sample size—46 IMEs conducted within five years—may allow defendants to argue at trial "that the trend was a fluke or the sample size was insufficient."  <u>Id.</u>

Defendants state that their systems are not searchable based on whether an IME exists, nor on who the IME provider was, and that the act of finding the first five years' of Dr. Nipper-provided IMEs involved the "intensive and time-consuming task" of "manually inspect[ing] individual claim files on which the accounting system indicated a payment was made to ExamWorks to determine if Dr. Nipper was the provider who performed an IME."  Docket No. 24 at p. 7.

In <u>Gowan v. Mid Century Insurance Co.</u>, this court recognized that if a succession of one doctor's IME reports established a trend of favoritism toward an insurer, or if such reports "contain[ed] identical passages suggesting rote

14

reiteration not tied to the specific facts of the case," either "would certainly undermine [an insurer's] reliance on [that doctor's] report[s] . . . as a basis for denying . . . claim[s]."  309 F.R.D. 503, 516 (D.S.D. 2015).  The court permitted the plaintiff to discover 12 years' worth of IMEs provided to the defendant by the doctor in question.  Id. at 516–18.  But there, the court was aware that the number of IMEs contemplated was 11.  Id. at 516.

In Hofer v. United Financial Casualty Co., cited by Ms. Stedillie, the district court ordered that all IMEs, with no time limitation, be produced as to one doctor serving one insurer.  See Pl's Legal Mem. in Supp. of Mot. to Compel Resps. to Disc. Reqs., 4:15-cv-04181-KES at pp. 9–10 (D.S.D. 2016) ECF No. 14 [hereinafter Hofer Mem. in Supp.]; Order, 4:15-cv-04181-KES at p. 1 (D.S.D. July 26, 2015) ECF No. 26 [hereinafter Hofer Order].  However, when the doctor's client list was expanded to include the insurer parent corporation, the district court narrowed discovery to a ten-year period.  Hofer Mem. in Supp. at pp. 11, 13; Hofer Order at pp. 1–2.  In this way, the district court maintained the proportionality of the discovery; as it expanded the scope of responsive entities, it reduced the time period of production.

In Haukaas I, this court was asked to compel about a decade's worth of IMEs, conducted by *any* doctor in *any* geographic location on behalf of the insurer.  2021 WL 5416251, at *11–15.  The court, recognizing the undue burden such a request would cause, narrowed production temporally to a five-year period of time, and geographically to the states that comprise the Eighth Circuit.  Id. at *15.

None of these cases suggest a bright-line rule.  What they each exhibit is simply the recognition that the needs of discovery are curtailed when burden outweighs benefit.  FED. R. CIV. P. 26(b)(1), (b)(2)(C)(iii).

The facts of the instant case favor production.  Like in Hofer, Ms. Stedillie's request is confined to one doctor's IMEs provided to one insurer.  Where the Hofer court ordered such discovery with no temporal limitation, Ms. Stedillie seeks less—a ten-year window.  Where this court's Haukaas decision contemplated borders of discovery co-extensive with the ends of the Eighth Circuit, here, discovery appears limited to only Minnesota and South Dakota.  Cf. Docket No. 26 at p. 6.

While manually inspecting individual claim files is unquestionably a burden on liberty, it is not an act that is "inherently undue."  Haukaas II, 2022 WL 1719412, at *6.  And where that burden is self-made, little weight can be afforded it.  Haukaas I, 2021 WL 5416251, at *9.  Questions of physician credibility commonly recur in insurance law.  Insurance companies are on notice that including a searchable variable for doctor name in their systems would aid in the efficient production of discovery.  To the extent a company chooses to forego such obvious functionality, the choice will not serve as a shield from responding.  As an alternative, defendant may be able to simply request the files directly from Dr. Nipper/ExamWorks, which could obviate any burden associated with searching defendants' files.

Ms. Stedillie's motion to compel as it pertains to Request for Production No. 14 is granted.

### 4.     Request for Production No. 15

Request for Production No. 15 states:

> Produce all human resource manuals, salary administration
> manuals, personnel bulletins or manuals, orientation booklets,
> directives, memos or other documents used during the previous
> ten (10) years to inform claims personnel of the manner in which
> they can expect to receive salary increases, bonuses or other
> commissions.

Docket No. 19-3 at p. 6.

Defendants have not produced any responsive discovery for this request.

Cf. id.; Docket No. 22-1 at p. 1.  Important to defendants' argument resisting

production is the text of Request for Production No. 16, which states:

> Produce all documents which relate to incentives given to claims
> personnel in return for reducing the amount of claims' payments,
> reducing combined ratio, reducing claim severity and reducing
> claims' payouts.

Docket No. 19-3 at p. 6.

Defendants argue that because their response to Request for Production

No. 16 was "None," Request for Production No. 15 is rendered irrelevant—

because any responsive materials cannot help Ms. Stedillie make the showing

that salary increases, bonuses or other commissions are tied to Request 16's

aims.  Docket No. 24 at pp. 9–10.

Ms. Stedillie argues that district precedent allows for this discovery, and

that she "has the right to review Defendants' policies to negate their

contention" from Request for Production No. 16.  Docket No. 26 at pp. 9–11;

Docket No. 21 at pp. 9–10.

In <u>Hurley v. State Farm</u>, the defendant resisted similar discovery on the grounds that it had already complied—by producing the personnel files of two employees.  CIV. 10-4165-KES, 2012 WL 1600796, at *4–5 (D.S.D. May 7, 2012).  The court compelled a response, finding such materials relevant, and reminding State Farm that Mr. Hurley's request sought " 'all' information relating to bonus and incentive programs"—entity-wide.  <u>Id.</u>  Here, the court must consider a different argument—that the negative response to Request for Production No. 16 renders any documents responsive to Request for Production No. 15 irrelevant.

Request for Production No. 15 asks for "human resource manuals, salary administration manuals, personnel bulletins or manuals, orientation booklets, directives, memos or other documents."  Docket No. 26 at p. 11 n.2.  These materials are *documents*.  The documents requested are qualified in that they must "inform claims personnel of the manner in which they can expect to receive salary increases, bonuses or other commissions."  <u>Id.</u>  Thus, these documents *relate to incentives*.  <u>See</u> <u>Fairchild v. Forma Sci.</u>, 147 F.3d 567, 573 (7th Cir. 1998) (employer may give salary increases as incentive for future performance); <u>cf.</u> <u>United States ex rel. Mackillop v. Grand Canyon Educ., Inc.</u>, 626 F. Supp. 3d 418, 438 (D. Mass. 2022) ("the plain and ordinary meaning of an incentive payment is 'something paid . . . to motivate improved performance' and . . . a raise is exactly that.") (quoting <u>Ass'n of Private Sector Colls. & Univs. v. Duncan</u>, 681 F.3d 427, 443 (D.C. Cir. 2012)); <u>see also</u> <u>Bock v. Computer Assocs. Int'l, Inc.</u>, 257 F.3d 700, 706 (7th Cir. 2001) ("Incentive compensation

18

is thus an umbrella term that includes . . . commissions and bonuses.”).
Putting the terms together, Request for Production No. 15 seeks *documents
related to incentives*.

So does Request for Production No. 16.  That request asks for
“documents which relate to incentives given to claims personnel in return for
reducing the amount of claims’ payments, reducing combined ratio, reducing
claim severity and reducing claims’ payouts.”  Docket No. 19-3 at p. 6.  Such
cost-reducing acts are the heartland of Ms. Stedillie’s legal theory.  Docket No.
1, ¶ 53.  And because defendants already stated that no documents exist
*relating* to those acts’ incentivization, they argue that anything that remains of
Request for Production No. 15 is irrelevant.  Docket No. 24 at pp. 9–10.

The flaw in defendants’ argument is that it presumes defendants’
understanding of *relation* is universal.  Relation is an imprecise concept subject
to difference of opinion.  One juror might agree with defendants that none of
the materials relate to reducing claim payouts.  Another may believe that
“everything is related to everything else.”  <u>Cal. Div. of Labor Standards Enf’t v.
Dillingham Constr., N.A.</u>, 519 U.S. 316, 335 (1997) (Scalia, J. concurring).
Others may land somewhere in between.  Considering the variability of human
perspective, defendants’ response to Request for Production No. 16 provides
insufficient assurance that Request 15 is now all chaff and no wheat.  The
materials requested in Request for Production No. 15 remain relevant and
discoverable.  <u>Hurley</u>, 2012 WL 1600796, at *4–5.

Ms. Stedillie's motion to compel as it pertains to Request for Production No. 15 is granted.

### 5.      Request for Production No. 17

Request for Production No. 17 states:

> Produce all documents relating to efforts or goals to decrease loss ratios, or decrease claim severity costs, over the past ten (10) years.

Docket No. 19-3 at p. 6.

Again, for this request, defendants argue it is duplicative of Request for Production No. 16.  Docket No. 24 at pp. 9–10.  To some extent, defendants are correct.  Documents related to employee-incentivized cost-control measures are thoroughly covered by Request for Production Nos. 15 and 16.

But the language of Request for Production No. 17 is broader in concept. "[D]ocuments relat[ed] to efforts or goals to decrease loss ratios, or decrease claim severity costs" are not necessarily tied to employee incentivization.  Such documents can simply speak to an entity's standard operating procedure.  For example, before discarding a salad dressing container, a restaurant's operations manual may instruct its kitchen staff to scrape the container with a spatula to ensure all of the product is saved.  A trucking operation may instruct its drivers to purchase diesel from a list of preferred vendors who offer competitive pricing.  Most, if not all, companies are likely to have policies or procedures meant to reduce costs.  And for the instant case, it would defy common sense to find documents related to controlling claim costs relevant only when they incentivize employees.

Ms. Stedillie's motion to compel as it pertains to Request for Production No. 17 is denied in part. Any documents defendants provide as responsive to Request for Production No. 15 need not be duplicated here. For all other documents, Ms. Stedillie's motion to compel as it pertains to Request for Production No. 17 is granted.

### 6.     Request for Production No. 20

Request for Production No. 20 states:

> Produce a list of all workers' compensation claim investigations conducted by the adjuster(s) who made the determination on Plaintiff's claim within the past five (5) years and state whether such claim was accepted as compensable or denied in whole or in part. This Request is not limited to South Dakota. You may redact or withhold social security numbers, and bank, credit card or other financial account numbers of any person.

Docket No. 19-3 at p. 7.

Defendants resist production of this list on undue burden grounds, because production would "force Defendants to actually review untold tens of thousands of claim files for information and documents that have no bearing of any kind on . . . Plaintiff['s claim." Docket No. 24 at pp. 12–13.

Ms. Stedillie counters that the burden is self-imposed because defendants choose software without the search features that enable ready responses. Docket No. 21 at pp. 10–11. Ms. Stedillie stresses the importance of the discovery and the temporal limitation of five years, which, she argues, tip the scales in favor of production. Docket No. 26 at pp. 12–13.

What the court reads from this dispute is that the list requested does not exist. A request for production under Federal Rule of Civil Procedure 34

cannot require a party to create a document that does not exist—and that
includes lists that do not exist.  See Farmers Ins. Exch. v. West, Civ. No. 11-
2297 (PAM/JJK), 2012 WL 12894845, at *5 (D. Minn. Sept. 21, 2012) ("[I]t is
axiomatic that no party is required to create documents in response to a Rule
34 request for production of documents."); Dearborn Tree Serv. v. Gray's
Outdoorservices, LLC, CIVIL ACTION NO. 13-cv-12584, 2014 WL 6886407, at
*4 (E.D. Mich. Dec. 4, 2014) ("A request to produce cannot ask the responding
party to create documents, such as lists."); see also White v. Eastside Union
Sch. Dist., CV 12-4622 (RGK)(JCx), 2013 WL 12182033, at *1 (C.D. Cal. June
19, 2013) (collecting cases).  Plaintiff's request does not request the claims files
themselves, but rather a list of files which list does not exist.  Were this
discovery request made in the form of an interrogatory, the same obstacle to
production of the information would not exist.  Because creation of new
documents is outside the permissible ambit of Rule 34, compelling such
creation is *per se* unduly burdensome.

 Ms. Stedillie's motion to compel as it pertains to Request for Production
No. 20 is denied.

### 7.    Request for Production No. 24

Request for Production No. 24 states:

> Produce your contract with Dr. Nipper or his employer/contractor
> for the services he performed on Plaintiff's claim and any
> documents you use to evaluate Dr. Nipper's performance, and any
> documents involving your selection or vetting of Dr. Nipper.

Docket No. 19-3 at p. 8

As stated in Section C1, *supra*, this dispute has been whittled down to the discoverability of the rates that are paid to ExamWorks for IMEs conducted within the states that comprise the Eighth Circuit.  Docket No. 26 at p. 4.  The rates paid in South Dakota have been provided.  Docket No. 24 at p. 5.

Ms. Stedillie claims that rates paid in other Eighth Circuit states are relevant to her litigation:

> The fees Defendants paid to ExamWorks in other states are relevant to the litigation at hand.  This matter involves a breach of contract and a bad faith claim.  Accordingly, the compensation Defendants paid to the entity they hired to evaluate and manage Plaintiff's claim is highly relevant.  Plaintiff must be able to understand the basis for ExamWorks' fees and have the right to question the fee structure.  A review of the other states' fees may show a discrepancy in the amount ExamWorks charges Defendants for South Dakota claims compared to those of other states.  Plaintiff must then be able to question Defendants why the fees for South Dakota are more or less than other states and the basis for the discrepancy.  As ExamWorks is the agent that acquired Dr. Nipper's services, the relationship between ExamWorks and Defendants, including ExamWorks' compensation structure, is certainly important to this litigation.

Docket No. 26 at p. 4.

Defendants argue that even the South Dakota rates are likely irrelevant, and rates paid to ExamWorks in other states have no bearing on this case.  Docket No. 24 at pp. 5–6.

Defendants have the better argument.  Nothing in Ms. Stedillie's complaint suggests that defendants' alleged pattern of conduct is geographically isolated to South Dakota.  See Docket No. 1, ¶ 53.  Rather, the complaint alleges that defendants act with the purpose of "deny[ing] legitimate claims and reduc[ing] claim costs."  Id.  If defendants conduct themselves in

23

such a manner, it does not matter whether the claimant lives in South Dakota or North Dakota.  And so, it does not matter whether ExamWorks is paid the South Dakota rate or the North Dakota rate.  *A fortiori*, it does not matter if those rates are different.  It is unreasonable to suggest that the revelation of these rates could "bear on," or "could lead to other matter that could bear on, any issue that is or may be in th[is] case."  E.E.O.C. v. Woodmen of the World Life Ins. Soc'y, No. 8:03CV165, 2007 WL 1217919, at *4 (D. Neb. Mar. 15, 2007).  Ms. Stedillie's motion to compel as it pertains to Request for Production No. 24 is denied.

**D.    Attorney's Fees**

Ms. Stedillie asks the court to "award attorney's fees and costs for bringing th[ese] motion[s] under Fed.R.Civ.P. 37(a)(5)(A)."  Docket No. 21 at p. 12; Docket No. 20 at p. 1; Docket No. 17 at p. 1.

Under Federal Rule of Civil Procedure 37(a)(5)(A)(ii), this court is prohibited from awarding the movant's attorney's fees when "the opposing party's nondisclosure, response, or objection was substantially justified." Where, as here, defendants prevailed on a meaningful percentage of matters, the court finds such substantial justification exists.  Cf. Eddie's Truck Ctr., Inc. v. Daimler Vans USA LLC, 5:21-CV-05081-VLD, 2023 WL 4624888, at *10 (D.S.D. July 19, 2023).  The motion for attorney's fees is denied.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is:

ORDERED that Ms. Stedillie's Motion to Compel [Docket No. 17] is denied as moot.  It is further

ORDERED that Ms. Stedillie's Amended Motion to Compel [Docket No. 20] is granted in part and denied in part in accordance with this opinion. Defendants shall provide, within 21 days of the date of this order, documents responsive to the granted discovery requests.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 6th day of February 2024.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge